UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JERI GILLIN<br><br>Plaintiff,<br>v.<br><br>BARCLAYS BANK DELAWARE; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION, LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendants. | **COMPLAINT & REQUEST FOR JURY TRIAL** |

## I. SUMMARY

1. On July 31, 2024, Barclays Bank Delaware contacted Ms. Jeri Gillin concerning activity on her credit card, which Ms. Gillin confirmed was fraudulent. Specifically, it appears that a third party stole her identify and caused thousands of dollars in fraudulent charges. On September 20, 2024, Barclays mailed Ms. Gillin a letter stating that Ms. Gillin was not responsible for the reported fraudulent activity on the Account. Nevertheless, Ms. Gillin was appalled when she subsequently discovered, in October 2024, that Barclays was reporting her Credit Card as over 60 days late and with fraudulent charges totaling over $6,000. Ms. Gillin subsequently disputed the fraudulent charges with Barclays and also with Equifax, Trans Union, and Experian. Barclays subsequently reversed its decision without explanation, stating to Ms. Gillin that she was responsible for the fraudulent charges on her credit card. Moreover, Equifax, Trans Union, and Experian each failed to conduct an adequate investigation and improperly verified the fraudulent charges as accurate. Accordingly, Ms. Gillin now brings this action

against Barclays for violation of the Fair Credit Reporting Act (hereinafter, "FCRA") and the Massachusetts Consumer Protection Act. Ms. Gillin further asserts claims against Equifax, Trans Union, and Experian for violation(s) of the FCRA.

## II. PARTIES

2. Plaintiff Jeri Gillin (hereinafter, "Ms. Gillin" or "Plaintiff") is a natural person residing in Worcester, Massachusetts.

3. Defendant Barclays Bank Delaware (hereinafter, "Barclays") is a state-chartered bank pursuant to the laws of Delaware, with a principal office located in Delaware.

4. Defendant Equifax Information Services, LLC (hereinafter, "Equifax") is a limited liability company organized pursuant to the laws of Georgia, with a principal office located in Georgia.

5. Equifax is a "consumer reporting agency" as defined by U.S.C. § 1681a(f) of the FCRA, and it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1691a(d)(1) of the FCRA, to third parties.

6. Equifax is one of the largest credit reporting agencies in the United States, and it is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.

7. Defendant Trans Union, LLC (hereinafter, "Trans Union") is a limited liability company organized pursuant to the laws of Delaware, with a principal office located in Illinois.

8. Trans Union is a "consumer reporting agency" as defined by U.S.C. § 1681a(f) of the FCRA, and it is regularly engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1691a(d)(1) of the FCRA, to third parties.

9. Defendant Experian Information Solutions, Inc. (hereinafter, "Experian") is corporation organized pursuant to the laws of Ohio, with a principal office located in California.

10. Experian is a "consumer reporting agency" as defined by U.S.C. § 1681a(f) of the FCRA, and it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1691a(d)(1) of the FCRA, to third parties.

## III. JURISDICTION & VENUE

11. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and/or 1337 because this case arises under the laws of the United States and is brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. *See*, 15 U.S.C. § 1681p.

12. Venue is proper in this Court because a substantial portion of the acts giving rise to this action occurred within the Commonwealth of Massachusetts. 28 U.S.C. § 1391(b).

## IV. COMMON FACTS

13. In or around September 2019, Ms. Gillin opened a credit card account with Barclays identified with an account number ending in 7468 (which was subsequently changed to an account number ending in 2972) (hereinafter, the "Credit Card").

14. Ms. Gillin regularly used the Credit Card and paid off the balance each month.

15. On July 31, 2024, Barclays contacted Ms. Gillin by telephone and alerted her of some potentially fraudulent charges on the Account. She was told that purchases had been made

in New York and at Temu, and that a third party named Samuel A. Agyekum had been authorized to use the card.

16. Ms. Gillin told Barclays that she did not authorize these charges, that she did not know Mr. Agyekum, and that she had not authorized him to use the Account. She accordingly requested that Barclays change her Account number, update her verbal password, and issue new cards to her and her husband (who was an authorized user).

17. Barclays agreed to Ms. Gillin's requests and told Ms. Gillin that this situation had been resolved.

18. Following this phone call, Ms. Gillin was very concerned about her identify being stolen. Ms. Gillin reported the fraudulent charges to her bank, and changed her accounts there out of an abundance of caution. She also placed a freeze on her credit reports. She also subsequently filed complaints with: (1) the Worcester Police Department, (2) the Massachusetts Attorney General, (3) the Consumer Financial Protection Bureau, and (4) the Federal Bureau of Investigation.

19. On or about August 2, 2024, Ms. Gillin received from Barclays three (3) new cards – one for Jeri Gillin, one for William Gillin, and one for Samuel A. Agyekum. Upon receipt, Ms. Gillin called Barclays and asked why a card for Mr. Agyekum was included. In response, Barclays told Ms. Gillin that it would again issue new cards, but that another card for Mr. Agyekum would still be provided.

20. This response was unacceptable to Ms. Gillin. Accordingly, Ms. Gillin ultimately requested that the Credit Card be closed during this phone call. Ms. Gillin then owed a balance of approximately $365.00 on the Credit Card. Ms. Gillin paid this sum to Barclays on or about August 5, 2024.

21. Ms. Gillin never authorized Samuel A. Agyekum to incur any charge(s) on the Credit Card.

22. Despite Ms. Gillin's request that the Credit Card be closed, she continued to receive emails from Barclays suggesting that the Credit Card was still open, and that her personal information had been updated (phone number, email address, password, security questions, etc.). Ms. Gillin contacted Barclays upon receipt of these emails and advised that they were incorrect. Notably, on or about August 16, 2024, Ms. Gillin received an email from Barclays thanking her for reopening her Account when she had not in fact authorized any such action.

23. Barclays again contacted Ms. Gillin by phone and told her that a third party was, at that very moment, speaking with another representative of Barclays on the phone and was requesting to change the Account information. Barclays identified the phone number that this third party was calling from. Ms. Gillin confirmed that this was not her phone number, and that she did not authorize any changes to her Account (which should have then been closed).

24. Ms. Gillin contacted Barclays by telephone in yet another attempt to resolve this matter. However, when she complained that her prior attempts to do so had been unproductive, the representative she spoke with cursed at her and hung up on her.

25. On September 20, 2024, Barclays mailed Ms. Gillin a letter stating that Ms. Gillin was not responsible for the reported fraudulent activity on the Account. Upon receipt, Ms. Gillin was relieved that this nightmare was finally over.

26. Ms. Gillin's respite was only temporary, though. When Ms. Gillin checked her credit reports in October 2024 she was appalled to discover that Barclays was then reporting her as over 60 days late on the Account, and with an outstanding balance due of over $6,000. This reporting dropped her credit score by approximately 135 points.

27. Ms. Gillin thereafter filed disputes with Equifax, Trans Union, and Experian (hereinafter collectively, the "CRA Defendants") in which she alleged that charges on her Credit Card were fraudulent.

28. Upon information and belief, Barclays received notice of Ms. Gillin's disputes either from the CRA Defendants or directly from Ms. Gillin.

29. Within thirty (30) days of the receipt of Ms. Gillin's disputes, the CRA Defendants were each required to investigate the disputed information and to provide Ms. Gillin with the results of their investigation(s).

30. Experian failed to conduct an adequate investigation. Instead, Experian improperly verified the fraudulent charges as accurate.

31. TransUnion failed to conduct an adequate investigation. Instead, TransUnion improperly verified the fraudulent charges as accurate.

32. Equifax failed to conduct an adequate investigation. Instead, Equifax improperly verified the fraudulent charges as accurate.

33. At all times pertinent hereto, Defendants' conduct was willful and carried out in reckless disregard for a consumer's rights as set forth in the FCRA.

34. On November 12, 2024, Barclays wrote a letter to Ms. Gillin stating that "[o]ur Fraud team has completed a detailed review of your claim and, based on the information available, have concluded that the account(s) you identified are not fraudulent." This statement directly contradicts Barclays' letter from September 20. Nevertheless, Barclays provided no explanation of its decision.

35. Ms. Gillin and her husband wrote a letter to the Barclays Fraud Department and its General Counsel. Among other things, the letter states the following:

> We are senior citizens, retired, and live on a fixed income. Barclays' security lapses, incompetence and negligence has turned our lives upside down for nearly five (5) months. We have now spent hundreds of hours trying to clean up this mess and have taken every conceivable step to remedy Barclays' egregious security lapses. We followed all recommended procedures – we cancelled our accounts; we filed reports with the local police, the FBI and the CFPB; we froze out [sic] credit; we secured our bank accounts with our primary bank; we changed our passwords; and we even had to get new phone numbers and email addresses once we realized this breach had allowed the hacker to route those communications to himself. I called Barclays security division almost daily for months on end. Our credit scores had been consistently excellent until this incident, and now they have plunged 135 points due to no fault of our own. The stress and aggravation of this situation has rendered us unable to sleep at night and we have developed medical issues from the constant worry. Even after Barclays was notified of the fraud on July 31, 2024 and had clear directive to close the account and block further access, Barclays allowed this hacker to gain access to our account at least 14 times and change the security settings which prevented us from being able to prove our own identity when we discovered the fraud. On top of this, until we spoke with Jess on November 25, 2024, no one in your organization expressed any genuine concern or compassion about our situation.
>
> We are at our wits end. We would like this fraud investigation to be expeditated and the credit bureaus notified of your mistakes so that this nightmare will end.

36. On December 11, 2024, Barclays wrote Ms. Gillin another letter, which stated that the fraud claim on her account cannot be approved and that she was "responsible for payment toward the previously disputed balance, along with any associated finance charges and fees as stated in your Cardmember Agreement."

37. Upon information and belief, Ms. Gillin thereafter submitted multiple disputes to the CRAs in which she again alleged that charges on her Credit Card were fraudulent. Defendants again failed to conduct adequate investigations concerning these disputes and improperly verified the fraudulent charges as accurate.

38. As a direct and proximate result of Defendants' actions, Ms. Gillin suffered damages due to emotional distress and/or an invasion of their personal privacy, including but not limited to stress, anxiety, fear, anger, frustration, embarrassment, and humiliation. She also

experienced stomach pains and difficulty sleeping. In December 2024, Ms. Gillin's doctor prescribed her two medications to treat these symptoms.

39. As a direct and proximate result of Defendants' actions, Ms. Gillin suffered damages in the form of lost time and lost opportunities. She unsuccessfully spent numerous hours on numerous phone calls with Barclays and/or its agents in hopes of resolving this issue and preventing the identity theft from continuing.

40. As a direct and proximate result of Defendants' actions, Ms. Gillin's credit was damaged.

41. Ms. Gillin suffered an injury in fact that is traceable to the acts and/or omissions of Defendants, and which is likely to be redressed by a favorable decision in this matter.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(a)(1) (AGAINST BARCLAYS)

42. The preceding actions are incorporated herein by reference.

43. As a furnisher of information, Barclays is prohibited from furnishing information relating to a consumer to any credit reporting agency if its knows or has reasonable cause to believe that the information is inaccurate. 15 U.S.C. § 1681s-2(a)(1).

44. In violation of the FCRA, Barclays reported the fraudulent charges on Ms. Gillin's Credit Card notwithstanding that it knew or had reasonable cause to believe that the information was inaccurate.

45. As a direct and proximate result of Barclays' violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

46. Barclays willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

47. Barclays negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT II:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)**
**(AGAINST BARCLAYS)**

48. The preceding actions are incorporated herein by reference.

49. As a furnisher of information, Barclays is obligated to investigate disputes from consumers concerning the accuracy of information being reported. 15 U.S.C. § 1681-s(b).

50. On numerous occasions, Ms. Gillin initiated a dispute with the CRA Defendants in which she requested that the CRA Defendants correct specific items in her credit file that were patently incorrect and damaging to her, namely fraudulent charges on the Credit Card.

51. Upon information and belief, Barclays received notice of Ms. Gillin's disputes either from the CRA Defendants and/or directly from Ms. Gillin.

52. Barclays, however, failed to conduct a reasonable investigation and continued furnishing the inaccurate information.

53. As a direct and proximate result of Barclays' violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

54. Barclays willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

55. Barclays negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT III:**
**VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT**
**G.L. c. 93A, § 2**
**(AGAINST BARCLAYS)**

56. The preceding actions are incorporated herein by reference.

57. Barclays is engaged in trade or commerce in Massachusetts.

58. Pursuant to G.L. c. 93A, § 2, Barclays is prohibited from engaging in unfair or deceptive acts or practices. Although the terms "unfair" and "deceptive" are not defined in the statute, courts have typically found a practice to be unfair if it is "(1) within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d. 915, 917 (1975). Furthermore, "an act or practice is deceptive it is possesses a tendency to deceive. In determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public." *Leardi v. Brown*, 394 Mass. 151, 156, 474 N.E.2d 1094, 1099 (1985).

59. By taking the foregoing actions, Barclays engaged in unfair or deceptive acts or practices, in violation of G.L. c. 93A, § 2. Ms. Gillin was first contacted by Barclays about

charges *that it believed were fraudulent*. Ms. Gillin then confirmed that she indeed had been the victim of identity theft. Although Barclays initially agreed that Ms. Gillin was not responsible for these charges, it subsequently reversed that decision without providing any explanation or appeal process. It further rejected her credit report disputes notwithstanding that these charges were plainly incurred through fraud and without Ms. Gillin's knowledge, authorization, or consent.

60. Barclays' actions also constitute a *per se* violation of G.L. c. 93A, § 2 because:

a. Barclays violated 940 C.M.R. § 7.07(2), which prohibits any knowingly false or misleading representation in any communication as to the character, extent or amount of the debt, or as to its status in any legal proceeding. Pursuant to G.L. c. 93A, § 2(c) and/or § 9, a violation of this law constitutes a violation of G.L. c. 93A, § 2.

b. Barclays' actions violated of the Federal Trade Commission Act (the "FTC Act"). Pursuant to G.L. c. 93A, § 2(c) and/or § 9, a violation of this law constitutes a violation of G.L. c. 93A, § 2. Moreover, Massachusetts has "wholly incorporated" the FTC Act into G.L. c. 93A. *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768, 773 n. 8 (1975); *McDermott* v. *Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 122 (1st Cir. 2014); and/or

61. Barclays knowingly violated G.L. c. 93A, § 2.

62. Barclays willfully violated G.L. c. 93A, § 2.

63. Ms. Gillin served Barclays with a pre-suit demand letter pursuant to G.L. c. 93A, § 9.

64. Barclays failed to timely tender a reasonable settlement offer.

65. Due to Barclays' violation(s) of G.L. c. 93A, § 2, Ms. Gillin is entitled to an award of actual damages, double or treble damages, statutory damages, costs, and attorney's fees.

**COUNT IV:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**(AGAINST EQUIFAX)**

66. The preceding actions are incorporated herein by reference.

67. At all times pertinent hereto, Equifax was a "consumer reporting agency" (hereinafter, "CRA") as that term is defined in 15 U.S.C. § 1681a(c).

68. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the disputed information is found to be inaccurate or incomplete, or if it is unable to verify the accuracy of the disputed information, then the CRA is required to promptly delete that information from the consumer's file. 15 U.S.C. § 1681i(a)(5)(A).

69. On numerous occasions, Ms. Gillin initiated a dispute with Equifax in which she requested that it correct specific items in her credit file that were patently incorrect and damaging to her, namely fraudulent charges on the Credit Card.

70. Equifax, however, never adequately investigated Ms. Gillin's disputes, as required by the FCRA.

71. Equifax failed to conduct a reasonable investigation and continued reporting the inaccurate information.

72. As a direct and proximate result of Equifax's violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

73. Equifax willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

74. Equifax negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT V:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**(AGAINST EQUIFAX)**

75. The preceding allegations are incorporated herein by reference.

76. Whenever a CRA prepares a consumer report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

77. Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gillin's Credit Card.

78. If Equifax had followed reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gillin's Credit Card, then it would have corroborated Ms. Gillin's claims that unauthorized fraudulent charges had been assessed to her Credit Card, and it would have removed or corrected the inaccurate information.

79. As a direct and proximate result of Equifax violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

80. Equifax willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

81. Equifax negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT VI:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**(AGAINST TRANS UNION)**

82. The preceding actions are incorporated herein by reference.

83. At all times pertinent hereto, Trans Union was a "consumer reporting agency" (hereinafter, "CRA") as that term is defined in 15 U.S.C. § 1681a(c).

84. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the disputed information is found to be inaccurate or incomplete, or if it is unable to verify the accuracy of the disputed information, then the CRA is required to promptly delete that information from the consumer's file. 15 U.S.C. § 1681i(a)(5)(A).

85. On numerous occasions, Ms. Gillin initiated a dispute with Trans Union in which she requested that it correct specific items in her credit file that were patently incorrect and damaging to her, namely fraudulent charges on the Credit Card.

86. Trans Union, however, never adequately investigated Ms. Gillin's disputes, as required by the FCRA.

87. Trans Union failed to conduct a reasonable investigation and continued reporting the inaccurate information.

88. As a direct and proximate result of Trans Union's violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

89. Trans Union willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

90. Trans Union negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT VII:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**(AGAINST TRANS UNION)**

91. The preceding allegations are incorporated herein by reference.

92. Whenever a CRA prepares a consumer report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

93. Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gillin's Credit Card.

94. If Trans Union had followed reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gillin's Credit Card, then it would have corroborated Ms. Gillin's claims that unauthorized fraudulent charges had been assessed to her Credit Card, and it would have removed or corrected the inaccurate information.

95. As a direct and proximate result of Trans Union violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

96. Trans Union willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

97. Trans Union negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT VIII:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**(AGAINST EXPERIAN)**

98. The preceding actions are incorporated herein by reference.

99. At all times pertinent hereto, Experian was a "consumer reporting agency" (hereinafter, "CRA") as that term is defined in 15 U.S.C. § 1681a(c).

100. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the disputed information is found to be inaccurate or incomplete, or if it is unable to verify the accuracy of the disputed information, then the CRA is required to promptly delete that information from the consumer's file. 15 U.S.C. § 1681i(a)(5)(A).

101. On numerous occasions, Ms. Gillin initiated a dispute with Experian in which she requested that it correct specific items in her credit file that were patently incorrect and damaging to her, namely fraudulent charges on the Credit Card.

102. Experian, however, never adequately investigated Ms. Gillin's disputes, as required by the FCRA.

103. Experian failed to conduct a reasonable investigation and continued reporting the inaccurate information.

104. As a direct and proximate result of Experian's violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

105. Experian willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

106. Experian negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

**COUNT IX:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**(AGAINST EXPERIAN)**

107. The preceding allegations are incorporated herein by reference.

108. Whenever a CRA prepares a consumer report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

109. Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gillin's Credit Card.

110. If Experian had followed reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Gillin's Credit Card, then it would have corroborated Ms. Gillin's claims that unauthorized fraudulent charges had been assessed to her Credit Card, and it would have removed or corrected the inaccurate information.

111. As a direct and proximate result of Experian violation(s) of the FCRA, Plaintiff has suffered damage, as more fully described above.

112. Experian willfully violated the FCRA. 15 U.S.C. § 1681n. Accordingly, Ms. Gillin is entitled to an award of actual damages (of not less then $100 and not more than $1,000), punitive damages, and attorney's fees.

113. Experian negligently violated the FCRA. 15 U.S.C. § 1681o. Accordingly, Ms. Gillin is entitled to an award of actual damages and attorney's fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for the following:

A. Pursuant to 15 U.S.C. § 1681n, actual damages (of not less than $100 and not more than $1,000), punitive damages, costs, and attorney's fees;

B. Pursuant to 15 U.S.C. § 1681o, actual damages, costs, and attorney's fees;

C. Pursuant to G.L. c. 93A, § 9, actual damages, double or treble damages, and statutory damages, plus costs and attorney's fees;

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff,
Jeri Gillin,
By counsel,

Christopher M. Brine (BBO 679289)
Brine Consumer Law
PO Box 1042
Worcester, MA 01613
P – (508) 556-1899
F – (508) 556-9951
cmb@brineconsumerlaw.com